Eastern District of Kentucky
**F I L E D**

OCT 03 2012

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON, KENTUCKY

| | |
|---|---|
| **BILLY JOE MCINTOSH**<br>533 E. Louise Street<br>Morristown, Tennessee 37814<br><br>  Plaintiff,<br><br>v.<br><br>**E-BACKGROUNDCHECKS.COM, INC.**<br>12770 Coit Road, Suite 950<br>Dallas, Texas 75251-1366<br><br>  SERVE:<br>  Kentucky Secretary of State<br>  700 Capitol Avenue<br>  Frankfort, Kentucky 40601<br><br>  Defendant,<br><br>AND<br><br>**UNKNOWN DEFENDANT**<br><br>  SERVE:<br>  Warning Order Attorney<br><br>  Defendant, | Civil Action No. 5:12-CV-310-DCR<br><br>JUDGE _____ |

## COMPLAINT

### (Jury Trial Demanded)

### INTRODUCTION

1.   This action is brought under the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a – 1681x, and under Kentucky statutory and common law.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1681p, 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the Plaintiff's claims occurred in this District, and more particularly, in or around Lexington, Fayette County, Kentucky.

## PARTIES

4. The Plaintiff, Billy Joe McIntosh (hereafter, "McIntosh"), is a resident of Hamblen County, Tennessee, and is a Consumer as defined by 15 U.S.C. § 1681a.

5. The Defendant, E-backgroundchecks.com, Inc. (hereafter, "EBC"), is a Texas corporation, headquartered in Dallas, Texas, and is a Consumer Reporting Agency as defined by 15 U.S.C. § 1681a.

6. The Defendant, Unknown Defendant, is an unknown individual, partnership, corporation, limited liability company, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity, whose location is unknown, and who is a furnisher of information to consumer reporting agencies as described in the FCRA.

## FACTS

7. EBC is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. These consumer reports include criminal background reports provided by EBC to potential employers of consumers.

8. On July 11, 1997, McIntosh pled guilty to four counts of drug-related charges for offenses that had occurred when he was age 20, namely: two counts of delivery of less than ½

gram of a Schedule II controlled substance, a Class C Felony, and two counts of delivery of ½ gram or more of a Schedule II controlled substance, a Class B felony.

9. In addition to being ordered to pay fees and fines, McIntosh was sentenced to three years of incarceration with the Tennessee Department of Corrections ("TDOC") for the Class C felonies, and eight years of incarceration with TDOC for the Class B felonies, with credit for time served. However, due to McIntosh's young age and status as a nonviolent offender, he served only 1 ½ month in the Hamblen County (Tennessee) Jail, 1 ½ months in Brushy Mountain State Penitentiary (Morgan County, Tennessee) and three months at the Wayne County (Tennessee) Boot Camp, a Special Alternative Incarceration Unit Program consisting of a highly disciplined, military-style training program combined with various treatment programs.

10. Following his completion of the boot camp training, McIntosh successfully avoided any further run-ins with the law turned his life around, began a career as a cable installer, and has avoided any run-ins with the law.

11. From approximately 2000 to the present, McIntosh has worked as a cable installer, a job which usually required him to travel away from his family for extended periods of time, depending on the project.

12. In September, 2010, while working in Mobile, Alabama, McIntosh learned of a job opportunity in Lexington, Kentucky, which would bring him closer to his family in Morristown, Tennessee. The position was as an independent contractor for Qualicom, LLC ("Qualicom"), a Lexington, Kentucky company specializing in the installation of residential and commercial cable/internet service.

13. In applying for the position with Qualicom, McIntosh disclosed his 1997 drug charges, but was informed that this would not be an issue as long as nothing else appeared on his criminal background report.

14. On September 27, 2010, McIntosh signed a Contractor Service Agreement with Qualicom. Under the arrangement with Qualicom, McIntosh was to earn $300.00 per day, or approximately $65,000 to $70,000 per year, as an independent contractor for Qualicom.

15. McIntosh began working for Qualicom on Tuesday, October 5, 2010, while Qualicom was awaiting a criminal background report on McIntosh that it had ordered from Defendant EBC.

16. McIntosh performed several installations for Qualicom on October 5 and October 6, 2010, but near the end of the day on October 6, 2010, Qualicom's owner informed McIntosh to immediately cease activity and, if he was in a customer's home, to leave immediately because something had come up on McIntosh's background check.

17. On October 8, 2010, Qualicom advised McIntosh that it would pay him for the services he had performed earlier in the week, but could no longer use him as an independent contractor.

18. Sometime later, McIntosh received a copy of the background report provided by EBC to Qualicom (the "Report"). The Report contained numerous inaccuracies and untruthful statements, the most egregious of which stated that McIntosh had been convicted of **felony first degree murder**.

19. McIntosh promptly filed a dispute claim with EBC, which after allegedly conducting a "reinvestigation", eventually removed the felony first degree murder from the Report. However, the damage had been done and Qualicom refused to continue working with McIntosh.

20. As a result of EBC providing grossly inaccurate and false statements about McIntosh to its customer(s), McIntosh has suffered both emotionally, in that he has experienced extreme distress and embarrassment, and financially, in that he lost employment through which he had the potential to earn over $2.5 million during the remainder of his working life.

## COUNT 1

21. McIntosh incorporates by reference those paragraphs set out above as if fully set forth herein.

22. EBC's failure to follow reasonable procedures to assure maximum possible accuracy of the information concerning McIntosh violated 15 U.S.C. § 1681e(b).

23. The conduct, action, and inaction of EBC was willful, malicious, oppressive, intentional, knowing and/or reckless, or undertaken with wanton disregard of the rights of McIntosh, rendering EBC liable for actual, statutory and punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. § 1681n.

24. McIntosh is entitled to recover costs and attorney's fees as well as appropriate equitable relief from EBC in an amount to be determined by the jury pursuant to 15 U.S.C. § 1681n.

25. In the alternative, the conduct, action and inaction of EBC was negligent, rendering it liable for McIntosh's actual damages, costs, and attorney fees in an amount to be determined by the jury pursuant to 15 U.S.C. § 1681o.

## COUNT 2

26. McIntosh incorporates by reference those paragraphs set out above as if fully set forth herein.

27. EBC's failure to maintain strict procedures designed to insure that the public record information which it provided on McIntosh was complete and up to date violated 15 U.S.C. § 1681k(a), in that such information was not only likely to, but <u>did</u> have an adverse effect on McIntosh's ability to obtain employment.

28. The conduct, action, and inaction of EBC was willful, malicious, oppressive, intentional, knowing and/or reckless, or undertaken with wanton disregard of the rights of McIntosh rendering it liable for actual, statutory and punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. § 1681n.

29. McIntosh is entitled to recover costs and attorney's fees as well as appropriate equitable relief from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

30. In the alternative, the conduct, action and inaction of EBC was negligent, rendering it liable for McIntosh's actual damages, costs, and attorney fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

## COUNT 3

31. McIntosh incorporates by reference those paragraphs set out above as if fully set forth herein.

32. In connection with the furnishing of the goods, services, and/or products or the consumer information identified in this Complaint, all of which was in the nature of consumer or household goods or services, EBC engaged in one or more unfair, false, and misleading or

deceptive acts within the meaning of the Kentucky Consumer Protection Act, KRS Chapter 367 ("KCPA").

33. In all such instances, the actions of EBC were unconscionable within the meaning of the KCPA.

34. As a result of these unfair, false, misleading or deceptive acts, McIntosh has suffered ascertainable losses of money or property in an amount to be proven at trial.

35. As a result of these unfair, false, misleading or deceptive acts, McIntosh is entitled to recover his compensatory and other actual damages, and all other damages specified under KRS Chapter 367.

36. The conduct of EBC in this instance was willful, malicious, oppressive, intentional, knowing and/or reckless, or undertaken with wanton disregard of the rights of McIntosh, thus entitling McIntosh to an award of punitive damages.

## COUNT 4

37. McIntosh incorporates by reference those paragraphs set out above as if fully set forth herein.

38. The actions of EBC were perpetrated knowingly, willfully, intentionally, and/or maliciously, and/or with flagrant and reckless indifference to the rights of McIntosh.

39. The conduct of EBC was either intended by EBC to cause severe emotional distress to McIntosh, or was such that EBC should have known that such conduct would in fact cause McIntosh severe emotional distress, and McIntosh has, in fact, suffered such severe emotional distress

40. EBC's conduct as alleged above therefore constitutes the tort of outrage or intentional infliction of emotional distress, therefore entitling McIntosh to those damages attributable thereto.

## COUNT 5

41. McIntosh incorporates by reference those paragraphs set out above as if fully set forth herein.

42. The erroneous consumer credit information furnished, reported and communicated by EBC to third parties, as alleged above, contained false statements of material fact concerning McIntosh.

43. The information so furnished was defamatory in nature, and the distribution and furnishing of such false and erroneous information directly and proximately caused embarrassment to McIntosh, injury to his reputation, and other damages as requested herein.

44. At all times, EBC's conduct was willful, intentional, and/or malicious, and/or carried out with a flagrant and reckless disregard as to its truth and total disregard for the rights of McIntosh, therefore entitling McIntosh to recover actual, compensatory and punitive damages for each and every publication of the false, defamatory allegations.

## COUNT 6

45. McIntosh incorporates by reference those paragraphs set out above as if fully set forth herein.

46. EBC's conduct invaded the privacy rights of McIntosh by:

   a. intruding upon the seclusion of McIntosh;

   b. misappropriating McIntosh's name, likeness, or other personal and private information;

  c. creating unreasonable public exposure of a matter or matters relating or pertaining to McIntosh's private life; and/or

  d. creating publicity or otherwise disseminating information which portrayed McIntosh in a false or unflattering light.

47. EBC's conduct directly and/or proximately caused, or was a substantial factor in causing, damages to McIntosh's reputation and emotional and mental health and well being.

48. At all times, EBC's conduct was willful, malicious, intentional, knowing, and/or taken in wanton and reckless disregard for the rights of McIntosh, entitling McIntosh to an award of damages.

## COUNT 7

49. McIntosh incorporates by reference those paragraphs set out above as if fully set forth herein.

50. EBC's intentional and improperly motivated conduct tortuously interfered with McIntosh's prospective and, indeed, actual business relationship with Qualicom, a relationship of which EBC knew or should have known, thus causing McIntosh to incur substantial damages when Qualicom canceled its contract and/or otherwise refused to continue doing business with McIntosh.

## COUNT 8

51. McIntosh incorporates by reference those paragraphs set out above as if fully set forth herein.

52. The Unknown Defendant violated 15 U.S.C. § 1681s-2 by furnishing, to one or more consumer reporting agencies, information relating to McIntosh that the Unknown Defendant knew or had reasonable cause to believe was inaccurate

53. The Unknown Defendant violated 15 U.S.C. § 1681s-2 by failing to promptly notify one or more consumer reporting agencies that incomplete or inaccurate information had been furnished, and by failing to provide any corrections to that information, or any additional information, necessary to make the furnished information complete or accurate.

54. The conduct, action, and inaction of the Unknown Defendant was willful, malicious, oppressive, intentional, knowing and/or reckless, or undertaken with wanton disregard of the rights of McIntosh rendering it liable for actual, statutory and punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. § 1681n.

55. McIntosh is entitled to recover costs and attorney's fees as well as appropriate equitable relief from the Unknown Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

56. In the alternative, the conduct, action and inaction of the Unknown Defendant was negligent, rendering it liable for McIntosh's actual damages, costs, and attorney fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, the Plaintiff, BILLY JOE McINTOSH, demands judgment against the Defendants, jointly and severally, in amounts considered fair and reasonable by the jury based upon the evidence for the following, and for each and every legal violation so proven, and further demand the additional equitable relief below:

1. All damages presumed at law or authorized for *per se* violations of any applicable law;

2. Statutory damages authorized under the FCRA, the KCPA, or otherwise under applicable law for each and every legal violation proven in evidence;

3. Damages associated with Plaintiff's past, present and future physical, mental and emotional pain, suffering, embarrassment and humiliation;

4. Actual damages associated with Plaintiff's diminution in his ability to labor and earn money, or loss of opportunity, ability to obtain credit, and/or any other financial damages flowing from any of the conduct alleged herein;

5. An award of compensatory damages, in an amount or amounts to be proven at trial;

6. Reimbursement for fees, costs, and other consequential damages and expenses;

7. Punitive damages due to the intentional, malicious, oppressive, knowing, reckless, or wanton conduct of the Defendants, together, in concert, or separately as shown by the evidence;

8. Trial by jury on all issues so triable; and,

9. Any and all other relief to which the Plaintiff may appear entitled, including but not limited to leave to amend this Complaint to the extent necessary to assert additional claims or pursue other parties or remedies.

Respectfully submitted,

_M. Thomas Underwood_ (signature)

M. THOMAS UNDERWOOD
**Mosley, Sauer, Townes & Watkins, PLLC**
401 W. Main Street, Suite 1900
Louisville, Kentucky 40202
Tel. (502) 589-4404
Fax (502) 589-4405
tunderwood@mstwlegal.com
*Counsel for Plaintiff*