UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BILLY JOE MCINTOSH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 12-310-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| E-BACKGROUNDCHECKS.COM, INC., | ) | **MEMORANDUM OPINION** |
| et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of Defendant E-backgroundchecks.com's ("BGC") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404.  [Record No. 13]  For the reasons set forth herein, that motion will be denied.

**I.**

Plaintiff Billy Joe McIntosh filed this action against BGC and an unknown defendant on October 3, 2012, in the Eastern District of Kentucky, alleging violations of the federal Fair Credit Reporting Act ("FCRA") and Kentucky statutory and common law.  [Record No. 1, p. 1] McIntosh is a resident of Hamblen County, Tennessee.  [*Id.*]  McIntosh contends that he chose this venue because a substantial part of the events giving rise to his claims occurred in this District, and more particularly, in or around Lexington, Fayette County, Kentucky.  These events began when McIntosh attempted to obtain employment as an independent contractor for Qualicom, LLC, a Lexington, Kentucky-based cable and internet installer.  [*Id.*, p. 3]  When

-1-

applying for the position, McIntosh disclosed a previous drug conviction and "was informed that this would not be an issue as long as nothing else appeared on his criminal background report." [*Id.*, p. 4] McIntosh began working for Qualicom on Tuesday, October 5, 2010, while Qualicom was awaiting a criminal background report on McIntosh.  He performed several installations on October 5 and 6, 2010, but was told on October 6, 2010 to cease his activity because "something had come up on McIntosh's background check."  [*Id.*]

Thereafter, Qualicom informed McIntosh that it could no longer use him as an independent contractor.  McIntosh claims that "sometime later," he received a copy of the background report that was provided to Qualicom, and that it "contained numerous inaccuracies and untruthful statements, the most egregious of which stated that McIntosh had been convicted of felony first degree murder."  [*Id.*]  McIntosh alleges violations of the FCRA, the Kentucky Consumer Protection Act, and common law claims of intentional infliction of emotional distress, defamation, invasion of privacy, and tortious interference with a prospective and actual business relationship.[1]

BGC performs background checks.  It is incorporated and headquartered in Texas. [Record No. 13-1, p. 4]  BGC asserts that it "provided the Report on [McIntosh] to an Illinois-headquartered company [] that had contracted with BGC to provide such a report."  [*Id.*]  BGC further states that an unidentified "Client requested a consumer background report for employment screening purposes on [McIntosh] from BGC on October 7, 2010."  [*Id.*] According

---

[1]  BGC has filed a motion to dismiss the common law claims (Counts IV, V, VI, and VII), arguing that the statute of limitations bars these claims.  BGC has also moved to dismiss the KCPA claims (Count III), arguing that there is no privity of contract as required under the statute.  [Record No. 12]

to BGC, the company that provided the allegedly false information about McIntosh has been identified as GDS, a Texas company. [*Id.*, p. 5] BGC asserts that it "has no client relationship with Qualicom and BGC never provided any information about [McIntosh] to Qualicom." [*Id.*]

## II.

BGC requests that venue be transferred to the United States District Court for the Northern District of Texas at Dallas pursuant to 28 U.S.C. § 1404. This statutory section provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The parties agree that the action could have been brought in the Northern District of Texas. [*See* Record No. 21, p. 5 ("[T]here is no question that McIntosh *could* have filed this action in the Northern District of Texas.").] However, the issue is whether the case *should* be transferred to "prevent the waste of time, energy and money and to protect litigants witnesses and the public against unnecessary inconvenience and expense."

The Court has "broad discretion" in ruling on a motion to transfer venue. *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing,* 406 F. Supp. 2d 751, 754 (E.D. Ky. 2005). When ruling on a transfer motion, the parties agree that the Court should consider and balance the following factors:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's

choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Cowden v. Parker & Assoc., Inc.*, No. 5:09-CV-0323-KKC, 2010 WL 715850, at *3 (E.D. Ky. Feb. 22, 2010).

The burden is on the party seeking transfer and a plaintiff's choice of forum is entitled to "considerable weight." *Id.* (citing *MSDG Mobile, LLC v. Am. Fed., Inc.*, No. 1:05-CV-123M, 2006 WL 515531, at *6 (W.D. Ky. Feb. 28, 2006)). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951). Further, "a motion to transfer venue under Section 1404(a) cannot be used simply to shift the inconvenience of litigation from the defendant to the plaintiff." *Copeland v. Choice Fabricators, Inc.*, 492 F. Supp. 2d 783, 789 (S.D. Ohio Sept. 19, 2005). The Sixth Circuit also has indicated that district courts have broad discretion to determine when convenience or the interests of justice make transfer appropriate. *Reese v. CNH Am., LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

## A.     Plaintiff's Choice of Venue and Operative Facts

Generally, the plaintiff's choice of forum is given significant weight and will not be disturbed unless the other factors weigh substantially in favor of transfer. *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 887-88 (N.D. Ohio Aug. 31, 1999). However, the plaintiff's choice is given less weight if, as here, it is not the plaintiff's residence. *Cent. States Welfare Fund v. Guarantee Trust Life*, 8 F. Supp. 2d 1008, 1010-11 (N.D. Ohio June 16, 1998). In addition, a plaintiff's choice of venue will be given less weight if the operative events giving

rise occurred elsewhere. *See Valvoline Instant Oil Change Franchising, Inc v. RFG Oil, Inc*. No. 12-CV-39-KSF, 2012 WL 3613300, at *5 (E.D. Ky. Aug. 22, 2012).

Here, the parties dispute where the operative facts giving rise to the suit occurred. McIntosh maintains that a substantial events occurred in Lexington, Kentucky. Further, Qualicom was based in Lexington at times relevant to this action. However, BGC argues that "[a]t the end of the day, this is a federal FCRA case" and that the plaintiff "tries to make Kentucky relevant by tacking on a KCPA claim and several Kentucky common law claims" that are subject to dismissal. [Record No. 13-1, p. 14] When considering transfer motions in FCRA cases, some courts have noted that the situs of the material events is generally the place where the defendant credit reporting agency conducted its business. *Smith v. HireRight Solutions, Inc*., No. 09-6007, 2010 WL 2270541, at *4 (E.D. Pa. June 7, 2010).

Although BGC argues that this matter is essentially a federal FCRA case, it has also recognized that McIntosh's claim for defamation "is his central claim for recovery [under the common law] because all of his other common-law claims arise from it." [Record No. 12-1, p. 3] Regarding the defamation claim, the situs of the operative facts would be within the Eastern District of Kentucky, because Lexington is where the allegedly defamatory report was published to the employer. Thus, this is not a case where *no* operative facts occurred in the venue where the claim was filed. At best, this factor cuts both ways and does not weigh heavily in favor of disturbing McIntosh's choice of venue.

### B.    Convenience of Witnesses and Ability to Subpoena

BGC argues that the Northern District of Texas would be more convenient for both party and non-party witnesses.  It asserts that its witnesses with knowledge pertinent to Plaintiff's claims reside within the Northern District of Texas.  [Record No. 13-1, p. 9] And it identifies several potential witnesses, including: Craig Kessler, BGC's President; employees on BGC's management team; employees in BGC's sales department; employees in BGC's client relations department; and employees in BGC's data acquisition department.  [*Id.*]  BGC asserts that all of these witnesses are located in Dallas, Texas.  In addition, BGC indicates that the related entity (GDS), a non-party to the case, is also located in Texas.  BGC argues that GDS's location should be controlling because "[i]t is the convenience of non-party witnesses . . . . that is the more important factor and is accorded greater weight."  [Record No. 13-1, p. 10 (citing *Boiler Specialist, LLC v. Corrosion Monitoring Serv., Inc*., No. 1:12-CV-47, 2012 WL 3060385 (W.D. Ky. July 26, 2012))]

BGC is correct that the convenience of non-party witnesses is given greater weight than the convenience of witnesses employed by or related to parties to the case.  This is due, in part, to the limited ability of a court to compel the testimony of non-party witnesses.  *See* Fed. R. Civ. P. 45.  Under the Federal Rules of Civil Procedure, a federal district court is empowered to subpoena non-party witnesses, but that power has some limitations. Fed. R. Civ. P. 45(3)(A)(ii). However, McIntosh has moved to file a First Amended Complaint for the sole purpose of substituting the now-identified GDS for the "unknown defendant."  [*See* Record No. 26]  In its response to the motion to file an amended complaint, BGC does not oppose the addition of GDS

as a new-party defendant to this action, but asserts that the proposed amendment does not change the facts applicable to its motion to dismiss the complaint and the motion to change venue. While it may be true that the amended complaint would not change the facts applicable to a motion to dismiss, the addition of GDS as a party would mean that there would be no non-party witnesses residing in the Northern District of Texas.

The Court must also consider non-party witnesses from the now-defunct Qualicom. The plaintiff argues that the witnesses "most crucial to McIntosh's claim will be present or former representatives of Qualicom, who are believed to reside in Kentucky, and representatives of Premier CC, who presumably are located in Illinois." [Record No. 21, p. 6]  The materiality of prospective witnesses' testimony, and not merely the number of prospective witnesses, has been properly considered in determining the extent to which their convenience will be weighed. *Dwyer v. Gen. Motors Corp*., 853 F. Supp. 690, 693 (S.D.N.Y. 1994).  Both parties assert that their prospective witnesses are material, and the Court cannot say at this stage of the litigation that witnesses located in Texas are more material than those in Kentucky or Illinois.  Although BGC is correct that there is some uncertainty regarding the location of Qualicom witnesses, taking into account the Court's limited subpoena power for non-party witnesses, the issue of witness convenience does not weigh heavily in favor of transfer.

**C.    Location of Relevant Documents and Relative Ease of Access to Sources of Proof**

BGC next argues that much of the tangible evidence is located at BGC's headquarters in Dallas, Texas.  It identifies the following key documents:  documents related to the production of consumer reports, including the subject background report; documents and information

reflecting BGC's procedures "to ensure maximum possible accuracy of reports because those procedures were developed and implemented in Dallas"; e-mails; documents reflecting "how a customer orders a consumer report from BGC and the information required during the ordering process"; data for the background check reports that BGC provides to its clients, "which is provided to BGC from GDS"; and "records and communications between BGC and consumers." [Record No. 13-1, p. 12]

However, the location of documents is a relatively less important consideration in the transfer convenience analysis, given the comparatively low cost of transporting documents. *Pennwalt Corp v. Purex Indus.*, 659 F. Supp. 287, 290 (D. Del. 1986). Indeed, as McIntosh points out, "BGC's entire business is premised on the idea of immediately transmitting documents all across the country, if not the world." [Record No. 21, p. 7] Although this factor weighs slightly in favor of transfer, it is not entitled to much weight due to the ability to transmit documents electronically.

### D.    Convenience of the Parties

When considering the convenience of the parties, the "logical starting point" is evaluation of their residences in relation to the Eastern District of Kentucky and the Northern District of Texas. McIntosh resides in Morristown, Tennessee, approximately 175 miles from Lexington, Kentucky. His residence is approximately 889 miles from Dallas, Texas. [Record No. 21] And while BGC has minimal distance to travel to the Northern District of Texas, it is located 865 miles from Lexington. Thus, while the Northern District of Texas is a more convenient for BGC, the Eastern District of Kentucky (located within driving distance from Tennessee), is

-8-

arguably a more convenient location for McIntosh. There is simply no result that would obviate the inconvenience of litigation for both parties. Because a § 1404 transfer should not simply shift the inconvenience of litigation from the defendant to the plaintiff, this factor is of little consequence.

### E.   Relative Means of the Parties

The relative means of the parties disfavors transfer. McIntosh has indicated that if the action is transferred to Texas, he will be unable to maintain the case because he is "financially incapable of prosecuting an action that far away." [Record No. 23] He states that he filed this action in the Eastern District "because that is where the primary events affecting [him] took place," and because his attorney is located here. [*Id.*] While the convenience of counsel is not an appropriate consideration under a § 1404 analysis, courts have held that transfer is not appropriate where it would effectively deprive a plaintiff of access to the courts. *See, e.g., In re Volkswagen AG*, 371 F.3d 201, 202-06 (5th Cir. 2004) (district court committed reversible error when it considered convenience of counsel as a factor in § 1404 analysis); *see also* 17 James Wm. Moore, *Moore's Federal Practice,* § 111.13[1][n] (3d. ed 2011).

### F.   Familiarity With Governing Law

BGC argues that the forum's familiarity with the governing law is a neutral factor. It argues that even if McIntosh's Kentucky law claims are not dismissed, "the issues are not complex, and there is no reason why a federal district judge in Texas would not be fully competent to decide issues of Kentucky law." [Record No. 13-1, p. 22] And while this Court

is more familiar with Kentucky law, the action is not particularly complex.  Thus, this factor is given little weight in the overall analysis.  Even so, this factor weighs slightly against transfer.

### G.    Trial Efficiency and the Interests of Justice

Finally, BGC argues that this action should be transferred due to the relative docket congestion of the Eastern District of Kentucky when compared to the Northern District of Texas.  Citing to the Federal Court Management Statistics, BGC it asserts that the Northern District of Texas is more favorable because "[t]he median time from filing to disposition [in the Northern District of Texas] is 6.4 months and from filing to trial, 18.4 months."  [Record No. 13-1, p. 23]  BGC then compares these numbers to the Eastern District of Kentucky "where the median time from filing to disposition is 8.9 months and from filing to trial, 24.5 months."  [*Id.*]  However, McIntosh counters — and the Court agrees — that there is not a substantial difference in disposition times between the two districts.  In fact, the statistical information may be of even lesser consequence if it is considered for a particular judge assigned to the case as opposed to weighted averages for all judges within the respective districts.  In short, this factor does not weigh in favor of transfer.

### III.

Looking at all relevant factors, the Court does not believe that transfer would be appropriate.  Accordingly, it is hereby

**ORDERED** that Defendant E-backgroundchecks.com's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404 [Record No. 13] is **DENIED**.

-10-

This 11th day of March, 2013.



Signed By:

*Danny C. Reeves*

United States District Judge