UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BILLY JOE MCINTOSH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 12-310-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| E-BACKGROUNDCHECKS.COM, INC., | ) | **MEMORANDUM OPINION** |
| et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of Plaintiff Billy Joe McIntosh's Motion for Leave to File his First Amended Complaint and Defendant E-Backgroundchecks.com's ("BGC") Partial Motion to Dismiss. [Record Nos. 12, 26] McIntosh seeks to file an amended complaint that is substantially identical to his original complaint, except that it adds an additional party. [*See* Record No. 26-3.] BGC opposes the request to the extent that the amendment would be futile for claims that will not survive its pending motion to dismiss Counts III, IV, V, VI and VII.[1] For the reasons stated below, the Court will grant McIntosh's motion to file an amended complaint, in part. BGC's partial motion to dismiss will be granted.

---

[1] BGC has only moved to dismiss the Kentucky common law claims and the Kentucky Consumer Protection Act ("KCPA") claim. It has not moved to dismiss claims based on the Fair Credit Reporting Act ("FCRA").

# I.

McIntosh's claims arise out of an attempt to procure a job as an independent contractor for Qualicom, LLC, a Lexington, Kentucky-based cable and internet installer.  [Record No. 1, p. 3]  When applying for the position, McIntosh disclosed a previous drug convictions and "was informed that this would not be an issue as long as nothing else appeared on his criminal background report."  [*Id.*, p. 4] He began working for Qualicom on Tuesday, October 5, 2010, while Qualicom was awaiting a criminal background report on McIntosh.  [*Id.*] The plaintiff performed several installations on October 5 and 6th, but was told on October 6th to cease his activities because "something had come up on [his] background check."  [*Id.*]

Thereafter, on October 8th, Qualicom informed McIntosh that it could no longer use him as an independent contractor.  The plaintiff asserts that "sometime later," he received a copy of the background report provided to Qualicom, and that the report "contained numerous inaccuracies and untruthful statements, the most egregious of which stated that McIntosh had been convicted of felony first degree murder."  [*Id.*]

McIntosh alleges violations of the FCRA, the KCPA, and Kentucky common law, including intentional infliction of emotional distress ("IIED"), defamation, invasion of privacy, and tortious interference with a prospective and actual business relationship.  [*Id.*]  He alleged that an "Unknown Defendant" violated 15 U.S.C. 1681s-2 by:

> (a) furnishing, to one or more consumer reporting agencies, information relating to the Plaintiff that the Unknown Defendant knew or had reasonable cause to believe was inaccurate, (b) failing to promptly notify one or more consumer reporting agencies that incomplete or inaccurate information had been furnished, and (c) failing to provide any corrections to that information, or any additional information, necessary to make the furnished information complete or accurate.

[Record No. 26-1, p. 2]

In BGC's Motion to Transfer Venue, the defendant identified Genuine Data Services, LLC ("GDS") as a related entity, and further identified the company as the "'entity that furnished information about Plaintiff that BGC used' in the background report." [Record No. 13-1, p. 4] Based on that identification, McIntosh now seeks permission to file an amended complaint to add GDS as a defendant. McIntosh also argues that the amendment should relate back to the date of the filing of the original complaint.

BGC has moved to dismiss the common law claims (Counts IV, V, VI, and VII), arguing that the statute of limitations bars these claims. The defendant has also moved to dismiss the KCPA claims (Count III), contending that there is no privity of contract as required by the statute. [Record No. 12]

## II.

### A.     The Plaintiff's Motion to Amend

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, the Court may allow a party to amend a complaint without the other party's consent, and should freely grant leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(c) provides that an amendment relates back to the date of the original pleading when the amendment asserts a claim "that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c). In addition, an amended will relate back to the date of the original filing of the complaint where it "changes the party or the naming of the party against whom a claim is asserted" if the amendment asserts a claim that arises out of the same conduct

set out in the original complaint and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.[2]  *Id.*  However, the Court need not grant a motion for leave to amend a complaint under Rule 15 if the amendment would be futile.  *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005); *see also Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 519 (6th Cir. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) .  Futility exists if "the proposed amendment would not permit the complaint to survive a motion to dismiss."  *Miller,* 408 F.3d at 817 (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

## B.    The Defendant's Motion to Dismiss

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

---

[2]  The Sixth Circuit has interpreted the notice requirement to include constructive notice in lieu of actual notice.  *Berndt v. State of Tennessee*, 796 F.2d 879, 884 (6th Cir. 1986).

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

In considering a 12(b)(6) motion, the Court is required to "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990) (citation omitted). However, the Court need not accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Thus, Rule 12(b)(6) essentially "allows the Court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery." *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991, 997 (W.D. Tenn. Mar. 10, 2009).

### III.

The plaintiff's tendered First Amended Complaint is identical to the original complaint, except that it identifies GDS as the unknown defendant. [*Compare* Record No. 1 to Record No. 26-3.] In addition, the tendered First Amended Complaint specifically identifies GDS as the company furnishing the information contained in the background report in Count VIII. [Record

No. 26-3, p. 9]  BGC asserts that it "does not object to GDS being joined in this suit for purposes of Count VIII; however, it does object to Plaintiff amending his Complaint to include Counts III through VII because these claims are futile."  [Record No. 28, p. 2]

An amendment to a complaint is considered futile if it could not withstand a motion to dismiss.  *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 573 (6th Cir. 2008); *Sinay v. Lamson & Sessions,* Co., 948 F.2d 1037, 1041-42 (6th Cir. 1991).  Accordingly, the Court will evaluate BGC's motion to dismiss before considering McIntosh's motion to file an amended complaint.  BGC has moved to dismiss claims the claims brought pursuant to Kentucky common law — Counts IV, V, VI, and VII — as time-barred.  [Record No. 12]  Additionally, BGC moves to dismiss McIntosh's claim under the Kentucky Consumer Protection Act, Count III, arguing that there is no privity of contract.

A.      **The Kentucky Common Law Claims**[3]

BGC argues that McIntosh's common law claims are time barred because his claim for defamation "is his central claim for recovery because all []of his other common-law claims arise from it."  [Record No. 12-1, p. 3]  It alleges that the crux of McIntosh's claim "is that BGC prepared a background report on Plaintiff that contained false information, that BGC published that background report to Qualicom who used the false information in the background report to discontinue its independent contractor relationship with Plaintiff."  [Record No. 12-1, p. 4]  McIntosh argues that it is premature to dismiss any of his claims at this stage of litigation "because the parties have not yet commenced discovery."  [Record No. 20, p. 2]  McIntosh

---

[3]  In both the original complaint and the amended complaint, McIntosh has only asserted these claims against BGC (referred to as "EBC" in the original complaint), not GDS.

argues that he "is entitled to explore [the relationship between GDS and BGC] through discovery, which may very well lead to more facts and evidence that would bolster Plaintiff's claims and defeat BGC's arguments for dismissal." [*Id.*]

Under Kentucky law, the statute of limitations for actions based on libel or slander expires one year after the date of publication. *See* KRS § 413.140. According to the complaint, the date on which Qualicom received the background report, or the date of the alleged defamatory publication, was October 8, 2010. [Record No. 1, p. 4; Record No. 26-3, p. 4] Thus, the statute of limitations for a claim of defamation in this action ran in October 2011, or about one year before McIntosh filed his complaint. [*See* Record No. 1.] McIntosh does not argue or plead any set of facts that would toll the statute of limitations. As a result, his defamation claim is time barred.

Although Kentucky statutes do not specifically set a time limit for McIntosh's other Kentucky common law claims of IIED, invasion of privacy, or tortious interference,[4] "[t]he rule is firmly established that a statute of limitations which specifically mentions a recognized tort applies to all actions founded on that tort regardless of the method by which it is claimed the tort has been committed." *Lashlee v. Sumner,* 570 F.2d 107, 109 (6th Cir. 1978) (citing *Skaggs v. Stanton*, 532 S.W.2d 442 (Ky. 1975)). BGC is correct that this case is analogous to *Lashlee*, where the "underlying wrong which the complaint alleges is defamation by publication of a

---

[4] Kentucky law establishes a five-year statute of limitations for actions based on, *inter alia*, contracts, trespass, fraud, and "for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated." KRS § 413.120.

libelous report, and the claim of injury set out in each count springs from the act of publication." 570 F.2d at 109.

In Counts IV, V, VI, and VII, McIntosh has pleaded causes of action where the "real purpose is to recover for the injury" of the publication of the false background report.  *Id.* Although he claims damages for invasion of privacy, IIED, and tortious interference with a prospective business relationship, all of these claims arise from the injury McIntosh claims that he suffered when he was allegedly defamed by the publication of the false background report. *See Branham v. Micro Computer Analysts*, 350 Fed. App'x 35 (6th Cir. 2009) (holding that the one-year statute of limitations for defamation claims also applied to a claim for invasion of privacy, where the invasion of privacy claim sprang from the same act underlying the defamation claim); *Kindoll v. Gonterman*, No. 2003-CA-002561-MR, 2005 WL 386880 (Ky. Ct. App. Aug. 17, 2005) (upholding the application of a one-year statute of limitations for a claim of tortious interference with a prospective employment relationship because the claim was based on his underlying defamation claim).  Thus, the one-year statute of limitations applies to Counts IV, V, VI, and VII of McIntosh's complaint.

McIntosh does not argue that his claims fall within the statute of limitations.  Rather, he argues that dismissing any of his claims would be premature because the parties have yet to begin discovery.  [Record No. 20, p. 2]  He summarily states that discovery may yield "more facts and evidence that would bolster Plaintiff's claims and defeat BGC's arguments for dismissal."  [*Id.*]  Additionally, McIntosh argues that BGC would not be prejudiced by refusing to dismiss those claims because BGC's motion to dismiss is only partial."  [*Id.*] He does not

contest that all claims center around the core set of facts; that is, the publication of the false background report to Qualicom.

BGC has demonstrated Counts IV, V, VI, and VII should be dismissed because they were filed outside of the statute of limitations for defamation claims. McIntosh does not seek to amend his complaint regarding these counts, nor has he offered any explanation of how discovery could potentially cure this glaring defect. Accordingly, Counts IV, V, VI, and VII will be dismissed.

### B.    The KCPA Claim

BGC argues that Count III of McIntosh's complaint[5] should be dismissed because the plaintiff cannot establish privity of contract as required by the KCPA. In Count III, McIntosh generally alleges that BGC "engaged in one or more unfair, false, and misleading or deceptive acts within the meaning" of Chapter 367 of the KCPA. The intent of the KCPA is "to protect the public interest and well-being of both the consumer public and the ethical sellers of goods and services." KRS § 367.120. There is a statutorily-created private right of action for "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property . . . . as a result of the use"of unfair, false, misleading or deceptive acts in the conduct of trade or commerce. KRS § 367.220. The plain language of the statute requires that privity of contract exist between the parties in a suit alleging a violation of the KCPA. *Ky. Laborers Dist. Council Health & Welfare Trust Fund v. Hill & Knowlton*, 24 F. Supp. 2d 755 (W.D. Ky. 1998).

_____

[5]  In the tendered First Amended Complaint, McIntosh has stated verbatim Count III from his original complaint.

McIntosh has not alleged that any privity of contract exists with BGC. Instead, he generally alleges that BGC's actions were "[i]n connection with the furnishing of the goods, services, and/or products or the consumer information" of the background report, yet he never alleges — and from the facts provided, cannot allege — that he purchased the background report he contends is false.[6]   The Court agrees that "[b]ecause Plaintiff did not purchase or lease anything, he has not alleged, and cannot establish the requisite contractual privity between him and BGC." [Record No. 12-1, p. 10]

McIntosh appears to agree that he cannot establish, or even allege, that privity exists with BGC because he did not purchase the background report. Instead, he cursorily argues that "Kentucky courts have not uniformly required privity to exist in order for a violation of the KCPA to be found." [Record No. 20, p. 3] And he cites to *Craig & Bishop, Inc v. Piles*, 2004-CA-001883-MR, 2005 WL 307860 (Ky. Ct. App. Nov. 18, 2005), *rev'd on other grounds*, 247 S.W.3d 897 (Ky. 2008), for this proposition. However, in *Piles*, the Supreme Court of Kentucky applied a definition from the Uniform Commercial Code to determine that prospective buyers of cars qualified as "purchasers" under the KCPA, despite the fact that the jury did not explicitly make a finding regarding whether a binding contract existed. *See Piles*, 247 S.W.3d at 903-04. *Piles* is inapposite because the consumer and purchaser in that case actually negotiated the purchase of the car. *Id.* at 902. And as BGC points out, *Piles* makes no mention of privity of contract. Instead, it takes a broader reading of the term "purchasers" under the specific and distinguishable facts presented to prevent frustration of the policy goals of the KCPA. This

---

[6] It is unclear which entity actually purchased the background check regarding McIntosh, as BGC claims that Qualicom was not the entity that originally requested it.

-10-

Court declines to broaden the definition of "purchaser" as McIntosh requests.  The plaintiff has not alleged that he negotiated with the defendant, much less that he purchased any good, service, or product from the defendant.  *See Tallon v. Lloyd & McDaniel*, 497 F. Supp.2d 847, 854-55 (W.D. Ky. 2007) (dismissing a KCPA claim where defendant was "several steps removed from privity of contract with the [plaintiff]"); *Brewer v. Portfolio Recovery Assoc.*, No. 1:07-CV-113-M, 2007 WL 3025077 (Oct. 15, 2007) (dismissing KCPA claims where the plaintiff failed to allege privity of contract with the defendant).

In summary, McIntosh has failed to allege any facts that would allow the Court to plausibly infer that he qualifies as a purchaser under the KCPA.  Thus, Count III will be dismissed.

### C.    The Amended Complaint

McIntosh also seeks to amend his complaint to add GDS as the previously unknown defendant.  The Court will grant that motion as it relates to the remaining claims, Counts I, II, and VIII.[7]  For the reasons discussed above, and because the addition of GDS as the unknown defendant does not change any analysis regarding the claims, it would be futile to grant leave to amend for the Kentucky common law claims and the KCPA claims.[8]  However, McIntosh has sufficiently shown that GDS should be added as a party in place of the unknown defendant.[9]  The

---

[7]  Count VIII asserts a claims only against GDS.

[8]  These counts are asserted only against BGC.

[9]  BGC does not oppose the addition of GDS as a party.  It simply indicated a concern regarding the additional expense and time of adding a party, and assumed that this would require a re-filing of the motion to dismiss.

Court will allow the amendment for the remaining claims. In addition, the amendment will relate back to the date of the original complaint because GDS had notice of the suit as a "related entity" to BGC. *See* Fed. R. Civ. P. 15(c).

## IV.

For the reasons discussed above, it is hereby

**ORDERED** as follows:

(1)    Defendant E-Backgroundchecks.com, Inc.'s partial Motion to Dismiss [Record No. 12] is **GRANTED** regarding Counts III, IV, V, VI, and VII.

(2)    The plaintiffs' Motion for Leave to File Amend Complaint [Record No. 26] is **DENIED** regarding Counts III, IV, V, VI, and VII. The motion is **GRANTED** regarding the remaining counts.

(3)    Genuine Data Services, LLC will be **SUBSTITUTED** as the party defendant in the place of the Unknown Defendant.

(4)    The plaintiff is given ten (10) days to file an Amended Complaint in compliance with this Memorandum Opinion and Order.

This 20th day of March, 2013.



Signed By:
*Danny C. Reeves* DCR
United States District Judge