UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BILLY JOE MCINTOSH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 12-310-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| E-BACKGROUNDCHECKS.COM, INC., | ) | **MEMORANDUM OPINION** |
| et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Genuine Data Services's ("GDS") Motion to Dismiss filed pursuant to Rule 12(b)(6). [Record No. 37] GDS asserts that the claims asserted against it by Plaintiff Billy Joe McIntosh are deficient under the Fair Credit Reporting Act ("FCRA"). Additionally GDS contends that the Amended Complaint fails to meet the pleading standards set out in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). For the reasons discussed below, GDS's motion will be granted.

**I.**

McIntosh's claim arises out of his attempt to procure a job as an independent contractor for Qualicom, LLC, a Lexington, Kentucky-based cable and internet installer. [Record No. 1, p. 3] He began working for Qualicom on Tuesday, October 5, 2010, but was ordered to stop on October 6th because "something had come up on [his] background check." [*Id.*] On October

8th, Qualicom informed McIntosh that it could no longer use him as an independent contractor. When McIntosh received a copy of the background report ("Report"), he discovered that it "contained numerous inaccuracies and untruthful statements, the most egregious of which stated that McIntosh had been convicted of felony first degree murder." [*Id.*]

On March 20, 2013, the Court granted Defendant E-Background Check's ("BGC") partial motion to dismiss but also allowed McIntosh to file a First Amended Complaint to add GDS as a defendant regarding the remaining claims.[1] [Record No. 31] In his Amended Complaint, McIntosh alleges that GDS violated 15 U.S.C. § 1681s-2 by: "furnishing, to one or more consumer reporting agencies, information relating to McIntosh that GDS knew or had reasonable cause to believe was inaccurate" and "failing to promptly notify one or more consumer agencies that incomplete or inaccurate information had been furnished, and by failing to provide any corrections to that information, or any additional information, necessary to make the furnished information complete or accurate." [Record No. 32, pp. 7-8] McIntosh further contends that "[t]he conduct, action, and inaction of GDS was willful, malicious, oppressive, intentional, knowing and/or reckless, or undertaken with wanton disregard of the rights of McIntosh rendering it liable for actual, statutory and punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. 1681n." [*Id.*, p. 8]

---

[1] In BGC's Motion to Transfer Venue, the defendant identified Genuine Data Services, LLC ("GDS") as a related entity, and further identified the company as the "'entity that furnished information about Plaintiff that BGC used' in the background report." [Record No. 13-1, p. 4] Based on that identification, McIntosh moved to amend its complaint, seeking to name GDS in the place of the previously "Unknown Defendant."

## II.

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

In considering a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court is required to "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990) (citation omitted). However, the Court need not accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal

conclusion couched as a factual allegation"). Thus, Rule 12(b)(6) essentially "allows the Court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery." *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991, 997 (W.D. Tenn. Mar. 10, 2009).

**III.**

The First Amended Complaint makes the following allegations regarding GDS, without referring to specific subsection of the FCRA:

> [] GDS violated 15 U.S.C. 1681s-2 by failing to promptly notify one or more consumer reporting agencies that incomplete or inaccurate information, or any additional information, necessary to make the furnished information complete or accurate.
>
> [] The conduct, action and inaction of GDS was willful, malicious, oppressive, intentional, knowing and/or reckless, or undertaken with wanton disregard of the rights of McIntosh rendering it liable for actual, statutory and punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. 1681n.
>
> [] McIntosh is entitled to recover costs and attorney's fees as well as appropriate equitable relief from GDS in an amount to be determined by the Court pursuant to 15 U.S.C. 1681n.
>
> [] In the alternative, the conduct, action and inaction of GDS was negligent, rendering it liable for McIntosh's actual damages, costs, and attorney fees in an amount to be determined by the Court pursuant to 15 U.S.C. 1681o.

[Record No. 32, pp. 6-7]

**A.    15 U.S.C. § 1581s-2(a)**

GDS argues McIntosh's claim should be considered under subsection (a) because his allegations track that subsection almost verbatim.[2]  It asserts that 15 U.S.C. § 1681s-2(a) does not provide a private cause of action and, therefore, dismissal under this subsection is appropriate.  The FCRA places distinct obligations on consumer reporting agencies (like GDS); users of consumer reports (like Qualicom); and entities that furnish information to consumer reporting agencies (like GDS).  *See Stafford v. Cross Ctry. Bank*, 262 F. Supp. 2d 776, 782 (W.D. Ky. 2003).  It is undisputed that McIntosh is attempting to hold GDS liable as an entity that furnishes information. [*See* Record No. 37-1, p. 5; Record No. 43, p. 5.]  GDS argues that McIntosh's allegations against GDS are simply recitations of 15 U.S.C. § 1681s-2(a)(1)(A), which is a provision of the FCRA only enforceable by government officials.  Thus, it does not provide a private cause of action.  [Record No. 37-1, pp. 5-6]; *see also Elmore v. N. Fork Bancorporation, Inc.*, 325 F. Supp. 2d 336, 339 (S.D. N. Y. July 14, 2004) ("[W]hat Congress gave with one hand in [1681s-2(a) and (b)], it partly took away in Sections 1681s-2(c) and 1681s-2(d)."); *Bach v. First Union Nat'l Bank*, 149 F. App'x 354, 358-59 (6th Cir. 2005).

McIntosh agrees that, unlike 15 U.S.C. § 1681(b), there is no private cause of action under 15 U.S.C. § 1681s-2(a). [Record No. 43, p. 5] And he further concedes that the language used in paragraphs 32 and 33 of his Amended Complaint is similar to the language used in

---

[2]  GDS correctly points out numerous times that McIntosh's claim mirrors the language of subsection (a).  In fact, GDS violated § 1681s-2 "by furnishing, to one or more consumer reporting agencies, information relating to McIntosh that GDS knew or had reasonable cause to believe was inaccurate" tracks the language of 15 U.S.C. 1681x-2(a)(1)(A), which states that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." [Record No. 32, p. 4]; *see also* 15 U.S.C. § 1681s-2(a)(1)(A).  As noted above, a private cause of action is not viable under subsection (a) claims.

subsection (a) of 15 U.S.C. 1681s-2. However, he contends that the allegations in the Amended Complaint "are equally considered violations of subsection (b), for which Plaintiff would[] have a private right of action." [Record No. 43, p. 6] In other words, it appears that McIntosh seeks to proceed under subsection (b) rather than subsection (a).[3]

B.      15 U.S.C. § 1681s-2(b)

Title 15 of the United States Code, Section 1681s-2(b), places a duty upon entities that furnish information after the receipt of notice of a dispute. After notice of a dispute, such an entity is required to take a number of steps, including conducting an investigation, reporting the results to the consumer reporting agency, and correcting, modifying or deleting any inaccuracies. 15 U.S.C. § 1681s-2(b)(A)-(D).[4]

---

[3] To the extent that McIntosh attempted to allege a cause of action under subsection (a), his claim will be dismissed based on the plain language of the statute and because of his current assertion that he seeks to proceed under subsection (b), rather than (a). *See* 15 U.S.C. §§ 1681s-2(a), (c), (d).

[4] The statute provides:

After receiving notice pursuant to [15 U.S.C. 1681i(a)(2)] of a dispute with regard to the completeness of accuracy of any information provided by a person to a consumer agency, the person shall

(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the consumer reporting agency pursuant to [15 U.S.C. 1681i(a)(2);
(C) report the results of the investigation to the consumer reporting agency;
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on

A majority of courts have concluded that there is a private cause of action under subsection (b).[5] This subsection requires a plaintiff to show that the entity furnishing the disputed information received notice of dispute from the credit reporting agency:

> Although a private citizen may bring an action under 15 U.S.C. § 1681s-2(b), this cause of action is not without limitations. The duties that are placed on furnishers of information by this subsection are implicated only after receiving notice [] of this title of a dispute with regard to the completeness of accuracy of any information provided by a person to a consumer reporting agency. Notice. . . must be given by a credit reporting agency, and cannot come directly from the consumer.

*SimmsParris v. Countrywide Fin. Corp*, 652 F.3d 355, 358 (3d. Cir. 2011) (internal quotation marks and citations omitted); *see also Downs v. Clayton Homes, Inc.*, 88 F. App'x 851, 853-54 (6th Cir. 2004). It is only after notice of a dispute is received by the entity furnishing the information that its duties under §§ 1681s-2(b)(A)-(D) are triggered. Absent this notice, a plaintiff cannot proceed under § 1681s-2(b). *Downs*, 88 F. App'x at 853-54.

GDS argues that McIntosh has failed to properly assert a cause of action under § 1681s-2(b) because he "has not alleged and cannot allege that GDS received notice of a consumer dispute from a [credit reporting agency], that GDS failed to conduct an investigation of a dispute, or that GDS failed to correct incorrect information." [Record No. 37-1, pp. 8-9] McIntosh

---

the results of the reinvestigation promptly–
  (i) modify that item of information;
  (ii) delete that item of information; or
  (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

[5] Some courts have not recognized a private cause of action under subsection (b); however, the Sixth Circuit has followed the majority of courts in holding that a consumer has a private cause of action under this subsection. *Bach,* 149 F. App'x at 354.

responds that "any reasonable person who reads the Plaintiff's Amended Complaint would have no trouble concluding from the facts stated therein that the Plaintiff is bringing its claim against GDS on the basis that GDS provided BGC with the incorrect information that appeared on the Plaintiff's background report that was published by BGC." [Record No. 43, p. 3] McIntosh further argues that the connection between BGC and GDS was established by BGC in its Motion to Transfer Venue.[6] [Record No. 43, p. 3]

In relying heavily on the relatedness of BGC and GDS, McIntosh argues that if he had "anticipated that GDS was unlikely to demonstrate even a rudimentary grasp of the context of the Amended Complaint[], he certainly would have set out plainly that 1+1 =2. However. . . that thought did not occur to the Plaintiff or his counsel because GDS' co-defendant and affiliated company[] had already established these facts." [*Id*., p. 4] But this argument misses the point. GDS is not claiming that it is not a related entity to BGC. In fact, it is not disputed that BGC and GDS are related entities. [*See* Record No. 13-1, p. 2.] As the Court stated above, the duties of an entity furnishing information under § 1681s-2(b) are not triggered until it is given notice of the dispute by the credit reporting agency (in this case, BGC). McIntosh has alleged facts from which the Court could plausibly infer that GDS received notice from BGC that the information was disputed. Rather, it appears that McIntosh seeks to rest on the relatedness of the entities to fill the gaps in his claim.

---

[6] BGC made statements identifying GDS as the "entity that provided the information about [McIntosh] included in the Report" and stated that "GDS is a related entity to BGC." [Record No. 43, p. 3]

It is notable that the only allegation regarding notice of dispute in the Amended Complaint is that "McIntosh filed a dispute claim with [BGC], which after allegedly conducting a 'reinvestigation,' eventually removed the felony first degree murder from the Report." [Record No. 32, p. 4] In his response to the motion to dismiss, McIntosh attaches a letter from BGC, dated October 25, 2010, whereby BGC acknowledges that it received a "dispute of the information contained within the background investigation report" it prepared.[7] [Record No. 43-3, p. 1] McIntosh also alleges "that GDS knew or had reasonable cause to believe [the information] was inaccurate," without further elaboration. *Id.*

These allegations and supplemental filings are not enough to create a plausible inference that BGC ever gave notice to GDS regarding the disputed information, much less that the notice was done in compliance with the requirements of 15 U.S.C. § 1681i(a)(2) to trigger GDS's obligations as an entity furnishing information under § 1681s-2(b). [Record No. 37-1, p. 7 n.3] Instead, they are simply recitations of elements of a claim under which McIntosh admittedly has no private cause of action.

---

[7] Generally, when considering a Rule 12(b)(6) motion, the Court limits its review to the Complaint and documents attached to the Complaint as exhibits. *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). The "district court may [in a 12(b)(6) motion] consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *see also Weiner v. Klais and Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Although McIntosh has submitted filings that are outside the four corners of his Complaint, even if they were considered to be referenced in the First Amended Complaint, they would not change the fact that McIntosh has failed to allege that GDS received notice of the dispute from BGC. *See Maiden v. N. Am. Stainless*, 183 F. App'x 485, 487 (6th Cir. 2005) (noting that courts are not required to consider matters outside the pleadings in a motion to dismiss).

McIntosh further alleges that "[a]fter the Plaintiff notified BGC that he disputed items in the Report, BGC sent a letter dated October 25, 2010, in which BGC stated that it contacted its 'sources' following receipt of the dispute and had made corrections to the report." [Record No. 43, p. 8] McIntosh infers from this statement that the only source to which BGC could be referring is GDS. [*Id.*] However, GDS has affirmatively represented to the Court that it did not receive notice of a dispute from BGC, a fact which McIntosh does not acknowledge. [Record No. 37-1, p. 7 n.3 ("BGC never informed GDS that Plaintiff disputed the information contained in the Report."); *see also* Record No. 44, p. 4.] GDS argues that this pleading deficiency and factual averment is fatal to McIntosh's claim against GDS. And this Court agrees.

Courts have consistently dismissed § 1681s-2(b) claims where a plaintiff has failed to allege that the entity furnishing disputed information received notice of the dispute from the credit reporting agency. *See, e.g., Massey v. MBNA Am. Bank*, No. 1:05-CV-44-M, 2005 U.S. Dist. LEXIS 18756, at *8 (W.D.Ky. Nov. 17, 2005) (dismissing under Rule 12(b)(6) because the plaintiff failed to allege any facts regarding the entity furnishing disputed information received notice of dispute); *Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 967 (N.D. Ill. 2005) (same); *Ruggiero v. Kavlich*, 411 F. Supp. 2d 734, 736-37 (N.D. Ohio 2005) (dismissing a plaintiff's § 1681s-2(b) claim where there was no allegation that the plaintiff gave notice of a dispute; thus, there was no allegation that the consumer reporting agency notified the entity furnishing disputed information of the dispute); *Girgis v. Countrywide Home Loans, Inc.*, 733 F. Supp. 2d 835, 851 (N.D. Ohio 2010) (same); *Abeer Tutanji v. Bank of Am*, No. 12-887-JLL, 2012 U.S. Dist. LEXIS 75271, at *14 (D.C. N.J. 2012) (same). As in those cases, the lack

of allegations in McIntosh's Amended Complaint regarding notice to GDS from BGC shows that McIntosh has not stated a claim for relief that is plausible on its face.

Nor can McIntosh save his claim based on the relatedness of GDS and BGC.[8] Although McIntosh does allege that he disputed the Report to BGC, this does not impute notice under § 1681s-2(b) because the duties under the statute are triggered only when the entity furnishing the disputed information receives notice of the dispute from the *credit reporting agency*, not from the consumer himself. *See Downs v. Clayton Homes, Inc.*, 88 F. App'x 851, 853 (6th Cir. 2004); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) ("These duties arise only after the furnisher receives notice of a dispute from a [credit reporting agency]; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b).") Accordingly, notwithstanding the fact that BGC and GDS may be related entities, McIntosh's allegation that he notified BGC of his dispute does not show that GDS was properly notified.

McIntosh also argues that, because discovery is ongoing, the motion to dismiss should be denied or held in abeyance. [Record No. 43, p. 5] However, this is not the standard under Rule 12(b)(6). The Court is not considering this matter under Rule 56 and McIntosh's claim does not have facial plausibility because he has failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[8] McIntosh points out that BGC "alluded to the fact that it expected both witnesses and documents relating to this lawsuit to be located in GDS' Texas headquarters, and used that information as a basis for trying to transfer venue to that state. It should further be noted that BGC and GDS have retained the same[] law firm to represent them in this action." [Record No. 43, p. 4]

*Iqbal*, 556 U.S. at 678. Recently, the Sixth Circuit again reiterated the importance of the federal pleading standards announced in *Iqbal* and *Twombly*:

> In the aftermath of [*Iqbal* and *Twombly*], a plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law. Instead, the sufficiency of a complaint turns on its "factual content," requiring the plaintiff to plead enough "factual matter" to raise a "plausible inference of wrongdoing." The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct.

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, No. 12-2620 (6th Cir. Aug. 14, 2013).

In *Flagstar Bank*, the court highlighted the purpose behind these pleading requirements, noting that discovery imposes costs "not only on defendants but also on courts and society" and recognizing that "plaintiffs can use the threat of imposing these burdens to coerce defendants into settling." *Id*. This counsels against allowing discovery in an attempt to cure pleading deficiencies where the complaint and related filings show that there is no plausible inference of wrongdoing on the part of GDS.

### C. Leave to Amend

Finally, McIntosh argues that if the Court deems that the Complaint insufficient, he should be given another opportunity to conduct discovery and file a second amended complaint. However, the Court notes that a plaintiff is generally "not entitled to an advisory opinion from the district court informing [him] of the deficiencies in the complaint and then an opportunity to cure those deficiencies." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 573 (6th Cir. 2008). Under *Iqbal*, a plaintiff should not be permitted to conduct discovery in order to fix factually deficient complaints, even where the necessary information is within the defendant's

exclusive possession. *New Albany Tractor, Inc., v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (*citing Iqbal*, 556 U.S. at 686). Rather, in such cases, dismissal with prejudice is proper. *See id.* at 1053.

In addition, McIntosh has not moved for leave to file a second amended complaint, nor has he provided the Court with a pleading he would seek to file.[9] Accordingly, the Court will not deny a well-supported motion to dismiss on the chance that McIntosh will be able to cure his pleading deficiencies, especially where GDS has represented that it never received notice, a deficiency that is fatal to McIntosh's § 1682s-2(b) claim upon which it seeks liability against GDS.

**IV.**

Although McIntosh alleged a general violation of 15 U.S.C. § 1681s-2, no private cause of action exists under subsection (a) of that statute. Additionally, the Amended Complaint and the plaintiff's factual allegations establish that he has not asserted facts that would entitle him to relief under 15 U.S.C. § 1681s-2(b). As a result, it is hereby

**ORDERED** that Defendant Genuine Data's Service's motion to dismiss [Record No. 37] is **GRANTED**. All claims asserted by Plaintiff Billy Joe McIntosh in the First Amended Complaint against Defendant Genuine Data Services are **DISMISSED**, with prejudice.

---

[9] Further, it is unclear that discovery or a second amended complaint would cure this factual and legal deficiency, as GDS has repeatedly stated that it did not receive notice of the dispute from BGC. [Record No. 37-1, p. 7 n.3]

This 12th day of September, 2013.



Signed By:
*Danny C. Reeves* DCR
United States District Judge